## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JOEY SULA, | § | |
| (TDCJ-CID #1550164) | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-3474 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND OPINION

The petitioner, Joey Sula, seeks habeas corpus relief under 28 U.S.C. § 2254. The respondent filed a motion for summary judgment, (Docket Entry No. 8), with the state-court record. (Docket Entries Nos. 9 & 10). Sula filed a response. (Docket Entry No. 11). Based on the pleadings, the motion and responses, the record, and the applicable law, the court grants the respondent's motion and enters final judgment by separate order. The reasons are stated below.

### I. Background

A jury found Sula guilty of the felony offenses of theft and money laundering. (Cause Number 48,258). On December 8, 2008, the court sentenced Sula to two ten-year sentences, to be served concurrently. Sula does not challenge his holding conviction. Rather, he challenges the Texas Board of Pardons and Paroles decision to deny him release on discretionary mandatory supervision. Sula filed an application for state habeas corpus relief on May 20, 2013, which the Texas Court of Criminal Appeals denied without written order on September 18, 2013. *Ex parte Sula,* Application No. 75,523-02 at cover.

On November 22, 2013, this court received Sula's federal petition.  Sula contends that the denial of mandatory supervision is invalid for the following reasons:

(1)     the Board improperly denied Sula's release to mandatory supervision because the Board made an incorrect determination that his accrued good-time credits do not accurately reflect his potential for rehabilitation; and

(2)     Sula was denied a meaningful opportunity to be heard when the Board failed to give him sufficient notice of his mandatory supervision review date.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 6).

## II.     The Applicable Legal Standards

Sula's petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Subsections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits."  An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural."  *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

The AEDPA provides as follows, in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495.

In deciding whether a state court's application was unreasonable, a federal court considers whether the application was "objectively unreasonable." *Id.* at 1495; *Penry v. Johnson,* 215 F.3d 504, 508 (5th Cir. 2000). The state court's fact finding is "presumed to be correct . . . and [receive]

deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules.  Section 2254(e)(1)—which mandates that findings of fact made by a state court are "presumed to be correct"— overrides the ordinary rule that, in a summary judgment motion, all disputed facts must be construed in the light most favorable to the nonmoving party.  Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, they must be accepted as correct.  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

Sula is a *pro se* petitioner.  In this circuit, *pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as pleadings filed by lawyers.  *See Martin v. Maxey*, 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti*, 648 F.2d 268, 271 (5th Cir. Unit A June 1981).  This court broadly interprets Sula's state and federal habeas petitions.  *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).

In *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 783–85 (2011), the Supreme Court held that the deference due a state court decision under § 2254(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (citations omitted).  The Court had previously held that "a state court need not cite nor even be aware of our cases under § 2254(d)." *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)).  When no explanation

accompanies a state-court decision, the petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." *Id.* When a state court fails to state which of the elements in a multipart claim it found insufficient, deference is still due that decision because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.*

## III.  Analysis

Sula argues that he has a liberty interest in his release to mandatory supervision and that any denial of release must comply with due process. The respondent argues that Sula received the process he was due, and that the Board properly denied release to mandatory supervision.

Sula argues that he was eligible for release on mandatory supervision for his first-degree theft and money laundering convictions. Neither offense included a finding of the use or exhibition of a deadly weapon and they are not ineligible for mandatory supervision under § 508.149(a) of the Texas Government Code. Sula notes that his wife, Shelly Sula, and Bill Loyd, Field Director of the Southeast Texas Prison Fellowship, both submitted letters of support to the Board.

Sula also notes that the Board has received several other letters of support from his friends, business associates, and clients. Sula argues that a review of the complete parole file and record clearly shows that if released from prison on mandatory supervision, he would not be a danger. He has no prior history of criminal activity or convictions; he was convicted of a nonviolent offense; and he had no disciplinary convictions in prison that forfeited previously earned good-conduct time credits. Sula received one major disciplinary case during his incarceration, but did not forfeit previously earned good-conduct time credits. Sula argues that the Board's denial of his release to mandatory supervision release was arbitrary and capricious. (Docket Entry No. 3, p. 16).

Under the mandatory supervision scheme in place since September 1, 1996, the mandatory nature of the scheme does not apply if the Board "determines that: (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public." *See* § 508.149.

This statute creates a "legitimate, although limited, expectation of release" in which inmates have a liberty interest. *Ex parte Geiken,* 28 S.W.3d 553, 558–59 (Tex. Crim. App. 2000); *see also Teague v. Quarterman,* 482 F.3d 769, 777 (5th Cir. 2007) (same) (citing *Geiken,* 28 S.W.3d at 558–59). "[Because] a liberty interest is created by the statute, due process requires notice and a meaningful opportunity to be heard." *Geiken,* 28 S.W.3d at 560 (citing *LaChance v. Erickson,* 522 U.S. 262 (1998)).

In the context of the Texas scheme for release on mandatory supervision, "due process requires notice and a meaningful opportunity to be heard," and "[i]f release is denied, the inmate must be informed in what respects he falls short of qualifying for early release." *Ex parte Geiken,* 28 S.W.3d 553, 560 (Tex. Crim. App. 2000) (citing *LaChance v. Erickson,* 522 U.S. 262, 266 (1998); *Greenholtz,* 442 U.S. at 16). The notice must typically inform the inmate "of the specific month and year in which he will be reviewed for release on mandatory supervision." *Ex parte Ratzlaff,* 135 S.W.3d 45, 50 (Tex. Crim. App. 2004).

The Texas mandatory supervision statute provides that "a parole panel shall order the release of an inmate who is not on parole to mandatory supervision when the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced." TEX. GOV'T. CODE § 508.147(a). The statute also provides as follows:

(b) An inmate may not be released to mandatory supervision if a parole panel determines that:

(1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and

(2) the inmate's release would endanger the public.

(c) A parole panel that makes a determination under Subsection (b) shall specify in writing the reasons for the determination.

TEX. GOV'T. CODE § 508.149(b)-(c).   Giving notice of the month and year in which an inmate will be reviewed for release on mandatory supervision at least 30 days before the review takes place allows the inmate to submit materials.

Due process does not require that an inmate receive a live hearing before the Board. *Geiken,* 28 S.W.3d at 559. "If release is denied, the inmate must be informed in what respects he falls short of qualifying for early release." *Id.* at 560 (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex,* 442 U.S. 1, 16 (1979)). "Due process does not require that the Board provide the particulars in the inmate's file upon which it rested the decision to deny release." *Id.* (citations omitted).

The record reflects that Sula received notice, an opportunity to be heard, and information as to why he did not qualify for release.  Sula was informed of the review more than 30 days before it was held.  Although an inmate is typically given notice of the month and year when the Board will conduct its review, that is not an absolute right. *See Retzlaff,* 135 S.W.3d at 50 n.18 (recognizing that designating a specific month for review may not always be practical). But "written notice that an inmate will be reviewed at some unspecified time in the future, coupled with a request that he submit relevant materials 'as soon as possible,' is constitutionally deficient notice." *Id.* at 50.  On

December 22, 2011, Sula, then incarcerated at the TDCJ's Ramsey I Unit in Rosharon, Texas, received a Notice of Initial Discretionary Mandatory Review notifying him that it would review his file to determine whether he was to be released to mandatory supervision. (Docket Entry No. 9-1, Parole Packet, p. 4). The Notice directed Sula to submit any additional information for the Board's consideration within thirty days. *Id.* The record does not reflect that Sula submitted any such information.

On March 22, 2012, the Board sent Sula a notice stating that he had been denied mandatory supervision. The relevant portion reads:

> You have been denied Mandatory Supervision Release for the reason(s) listed below. One or more components indicated in each paragraph listed below may apply, but only one is required.
>
> 9D1.   The record indicates that the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation.
>
> 9D2.   The record indicates that the inmate's release would endanger the public.
>
> 10D.   Other - Offense severity

(Docket Entry No. 8-1, Respondent's Motion for Summary Judgment, Ex. A, p. 6).

On November 2, 2012, Sula, then incarcerated at the TDCJ's Telford Unit in New Boston, Texas, received a Notice of Subsequent Discretionary Mandatory Review. This notice stated that the Board would review Sula's file to determine whether he was to be released to mandatory supervision and directed him to submit any additional information for the Board's consideration within thirty days. (Docket Entry No. 9-1, Parole Packet, p. 6). The record does not reflect that Sula

submitted any such information.  On February 27, 2013, the Board sent Sula a notice stating that he had been denied mandatory supervision.  The relevant portion of the notice reads:

> You have been denied Mandatory Supervision Release for the reason(s) listed below. One or more components indicated in each paragraph listed below may apply, but only one is required.
>
> 9D1.   The record indicates that the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation.
>
> 9D2.   The record indicates that the inmate's release would endanger the public.
>
> 10D.   Other - 10D- Quantity of theft; institutional adjustment.

(Docket Entry No. 8-1, Respondent's Motion for Summary Judgment, Ex. A, p. 8).

The notices informed Sula that he had 30 days to submit any relevant materials and that the Board would make its determination before Sula's projected release date.  The notices did not indicate what that date was when the hearings would occur.  The notices were not deficient under *Retzlaff* because they specified the time frame for Sula to submit materials to the Board.  *See Retzlaff,* 135 S.W.3d at 50.

Even if a notice is deficient, "to establish a denial of procedural due process, petitioner must show substantial prejudice" stemming from the deficiency. *Davis v. Mann,* 882 F.2d 967, 975 (5th Cir. 1989) (additional citation omitted)).  Sula had sufficient opportunity to be heard because he could have submitted materials to the Board to review. "[A] meaningful opportunity to be heard [consists of] an opportunity to tender or have tendered to the Board information in support of release." *Geiken,* 28 S.W.3d at 559–60.  Sula does not argue that he was prejudiced by the failure to notify him of the month of the hearing, and the court cannot identify any such prejudice.  Sula

submitted no materials for the Board's consideration.  He suffered no prejudice from the notice and no due process violation.

Third, the Board sent him a letter listing three reasons why he did not qualify.  Due process requires nothing more.  *See Geiken,* 28 S.W.3d at 560 (citing *Greenholtz,* 442 U.S. at 16).  Sula has failed to demonstrate that the Texas Court of Criminal Appeals unreasonably denied his claim requesting mandatory release.  The court must also deny this claim.  *See Harrington,* 131 S. Ct. at 786–87.

To the extent Sula claims that his due process rights were violated by a denial of parole, his claims fail. The United States Constitution does not create a liberty interest in parole.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1 (1979).   Texas law makes parole discretionary and does not create a liberty interest in parole that is protected by the Due Process Clause.  *Orellana v. Kyle,* 65 F.3d 29, 31–32 (5th Cir. 1995); *see also Johnson v. Rodriguez,* 110 F.3d 299, 308 (5th Cir. 1997).  Parole is a privilege, not a right.  *See Greenholtz,* 442 U.S. at 7 (convicted persons have no constitutional right to be conditionally released before the expiration of a valid sentence); 37 TEX. ADMIN. CODE § 145.3(1) ("Release to parole is a privilege, not an offender right, and the parole decision maker is vested with complete discretion to grant, or to deny parole release as defined by statutory law.").  An inmate who has met the minimum requirement for time served under the applicable parole eligibility statute is not entitled to be released on parole.  Rather, he is only entitled to a review to determine whether or not he will be released on parole.  *See* 37 TEX. ADMIN. CODE § 145.3(1) ("[T]he parole decision maker is vested with *complete discretion* to grant, or to deny parole release. . . .") (emphasis added); *Allison v. Kyle,* 66 F.3d 71, 74 (5th Cir. 1995) (because a prisoner has no liberty interest in obtaining parole in Texas, he cannot complain of the

constitutionality of procedural devices attendant to parole decisions).  Because Sula has no liberty interest in obtaining parole in Texas, he has no claim for violation of due process in the procedures attendant to his parole decisions.  *Orellana,* 65 F.3d at 31.

Having independently reviewed the entire state court record, this court finds that the state court's application of clearly established federal law and the state court's determination of facts in light of the evidence were not unreasonable.  There is no basis for habeas relief.

## IV.   Conclusion

The respondent's motion for summary judgment, (Docket Entry No. 8), is granted.  Sula's petition for a writ of habeas corpus is denied.  This case is dismissed.  Any remaining pending motions, including Sula's motion for discovery, (Docket Entry No. 12), are denied as moot.

The Supreme Court has stated that the showing necessary for a Certificate of Appealability is a substantial showing of the denial of a constitutional right.  *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)).  An applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further.  *See Clark v. Johnson,* 202 F.3d 760, 763 (5th Cir. 2000).  When a district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack,* 529 U.S. 484.

This court has denied Sula's petition after careful consideration of the merits of his constitutional claims.  This court denies a Certificate of Appealability because Sula has not made the necessary showing for issuance.

SIGNED on September 30, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge